and if my colleagues are ready I'll call the next case of Mr. Murugan v. U.S. Attorney General. May it please the court. My name is Viswanathan Rudrakumaran. I represent the petitioner in this line of what's happening in Sri Lanka very briefly your honor. In 2009 there was a war terrible war ended with a lot of problems a lot of international crimes. Then there was 2015 a new regime came into power. So if you look at the immigration judge's decision and the BIA's decision they are simply talking about there is no current persecution of Tamils. They emphasize the word current. So they were talking of the regime change that happened in 2015. But in 2019 again the so-called bad guys they came back to power and there have been a lot of reports and in fact during the last summer in the Supreme Court your honor there was a case Department of Homeland Security versus Thurasingam. A case involving the Sri Lankan Tamil but the case was whether section 8 U.S.C. 1252 sets forth certain limitation what when a non-citizen can bring habeas petition and whether that violates the suspension clause. That was the case that was the issue in that Supreme Court case. But Justice Breyer because in that case a lot of American professors they amicus brief about the Sri Lankan country condition and Justice Breyer observed now the petitioner sorry yeah now the defendant in that case has come with come up with some new facts. So the proper cause for the DHS have a new interview taking into account the new evidence. In fact in 2004 the third circuit in Berkshire versus Ashcroft at 378 F dot 3D 314 the third circuit suggested in these circumstances the better course would be for the government to send the case back to the agency to take into account the new facts because we are talking about stale facts the facts which are not relevant and unlike the seventh circuit which take judicial notice of the new facts the third circuit said that we cannot do it the congress doesn't allow us maybe the congress can make changes but the better course would be the government to send the case back to the agency to take the new facts into consideration. That's I would like to state at the outset. Secondly the factual predicates of this case. There are three factual predicates. One is what happened to the petitioner in Sri Lanka. It's a personal experience. Number two as a return asylum seeker. Number three as a Tamil. There are three factual predicate I'll come at the towards the end that we had to take all in conjunction. The first question is about the the past persecution. Our main argument in with respect to past persecution is the government agency did not take into account the mental harm to which he was subjected. The government's response no. They took into they noted the fact the whole record the agency in fact said that they review the medical documentation so that means that they have taken the mental harm also into account. There are various medical reports were submitted. One is the x-rays whether he had a fracture. The hospitalization. Then he went for three therapists for the mental harm and the government's imply insinuated that they took it into account. But under the maxim of expresso unis is exclusive arteries. Expression of one thing means exclusion of other thing. They talk about slapping. They talk about just hitting on his thigh. Not a single word. Not a single word about the mental harm they suffer. We suffer. So our main argument on the BIA the agency either the BIA or the IJ did not take into account the mental harm in the analysis of the past persecution. The other issue is the main issue. The nexus issue. Our contention your context in the historical context in the political context that the agency did not do it at all. In fact there are many cases of Sri Lankan cases. I think thousands of cases and the BIA issue some precedent decisions on Sri Lankan cases and I have cited the matter of SP the seminal case for which stands for the proposition of the nexus issue. The BIA said it's very difficult in the Sri Lankan case because the context the political dimension of the conflict but the BIA in the instance did it completely. Council let me ask you we have a recent opinion the Lingeswaran opinion dealing with persecution of Tamils. How does that case affect yours? Okay two things Shona. First thing Lingeswaran this very same argument was raised saying that the BIA the agency did not engage in context sensitive analysis therefore there was an error. However the court said that the context sensitive argument was not right below so you cannot raise now but with all due respect to the panel of the Lingeswaran case Shona it was raised it was raised in the below also but but the court's rationale the court said that argument this context sensitive argument the political dimension of the argument was not raised below therefore we cannot now now entertain that one. So that distinguishes here. Here they said we understand there was some human rights violations but they did not go into deep. They said okay Tamils having problem. What about the fact that we found that a pattern or practice of persecuting Tamils does not exist in Sri Lanka? You know that's as I mentioned in my letter reply to the 28th day letter of the government. These are all fact specific issues. Here this all depends on the on the particular record before your honor. You cannot simply make a grand statement. The court cannot make a political statement. There is no there's no pattern or practice of persecution. The court can only make a statement based on the record before before the court. So the fact you the court made a decision in Lingeswaran has no impact whatsoever. In fact the Lingeswaran case also suffered from the same problem because the court was talking about now we got a good governance everything's hunky-dory. That's not the case. So but my main argument factual finding factual finding of of one case have no presidential value for any other case. So what have that Lingeswaran case limited to that record. This case is limited to this record. A question about this record because on the on the question of political opinion the nexus argument that you've been making what about your client's testimony when asked did the army ever question you about whether you were involved in the movement and he says no no no they were just suspecting that they were saying that I had contact with these people that I had been in contact with these people. So that sounds like he is effectively denying that there's any nexus or any imputed political opinion. No no he did not say like he's he's denying political opinion not imputed political opinion. He said I didn't I don't have anything to with the LTT. So he's denying we are not arguing political opinion. We are arguing imputed political opinions. They he said repeatedly they suspect that I am connected to the LTT. So the judge the agency said no this is just a mere speculation on his part. That's what the agency dismiss it. But had you taken the context sensitive analysis it is a reasonable inference. It is not a speculation. It is a reasonable inference had you taken the context into account. So my client said imputed political opinion. He did not say that we are not arguing that political opinion. We are imputed political opinion and it suffers the analysis suffers because the agency did not take the context into account. It's a similar case. Also I guess I would have I guess I would have thought that the question sort of circles around political opinion that you know did the army ever question you about whether you were involved in the movement. That sounds to me like did the army impute to you political opinion. And he says no no no just connection with the people. Yeah because the connection with the two thing two response on the connection with the people these people for under the control of the LTT. There were two two governments were functioning. So these people were in the area controlled by the LTT. So then they thought the army thought these people are all sharing the same view. If it's an innocent investigation by the government saying that there's no political factor then why did they stop them. Why did the army say you cannot go and give any aid to these refugees. Why if it's just an innocent if it's a political neutral act. Why did the army stop them warn him because there's a political dimension there. Because these people they these people share the LTT views because they were living with under the control of the LTT. And when my client helps them this they attributed this view on my client also. So that's where I'm coming on your honor. Then I so just one last question one last question and then I'll be quiet. So yeah you know we have cases where from time to time we will remand for what we call lack of reasoned consideration where we think that the the have you made a reasoned consideration argument here and if not is it subsumed within some other argument that you've made. I think it's subsuming the arguments saying specifically that the board failed to take the context sensitive analysis. So that's it will be okay. And the other the third argument I'll come the other one too late on Gagsa Kumar. Gagsa Kumar was a returned asylum seeker. It was the precedent decision by from this court your honor that that that the return asylum seekers if they are if they are Tamils because the court was relying on a background materials from a church. In that background material it was stated if you are a Tamil you will be perceived as LTT. If you are a singleist you'll be perceived as a traitor. But the court by a slight mistake in the Gagsa Kumar case the court said if you are a singleist then you will be perceived as a Tamil tiger. That is very contradictory you know that's not fact and but the BIA knows better. BIA should have known better and BIA picking on that and saying what he's not a singleist so he cannot be perceived as an LTT person your honor. So that is that's that's another major error in that one. And the third thing that the court asked sorry the government argue how you can take all these things in conjunction. In Lingeswaran case the court also said that the Lingeswaran did not submit any authority saying that these cases should be taken into this fact should be taken into in conjunction. In Ganga Kumar the 11th circuit took in conjunction his ethnicity, his the status as a failed asylum seeker. This court took those two factors in conjunction. But so I submitted some unpublished BIA opinion. The BIA repeatedly takes these two factors in conjunction and in fact there was a specific remark based on the government's motion to remind it to take these factors in conjunction before this court that the court agreed to that remark. So these factors should be taken into conjunction which they did not the agency did not take take into account your honor. You've saved some time for rebuttal and we'll hear from you then. Ms. Green. I'm your honors I'm Susan Green. I represent the acting attorney general in this case and I have to apologize that I had the nightmare situation that in the middle of my opponent's argument I lost sound and so there there's a little bit that I did not hear so I from what I did here I would like to start out saying that the court has no warrant to disturb the agency's findings in this case and that has become even more clear since this case was briefed since this court has decided three similar cases in the interval between briefing and argument including the Lingus Warren case that I did hear you all talking about and my opponent says that each case has to be judged on its own facts of course that's true but the examining the Lingus Warren case and the record and our brief in this case shows that it was the same facts or if you look at Ms. Green, Ms. Beverly Martin, I want to talk I mean the record does seem like it's a mess so the IJ says that Mr. Murrigan's the evidence submitted was outdated and you know it says that the publication dates ranging from year 2014 to 2016 and that's the bait stamp 93 but then on bait stamp 84 it lists the exhibits you know up to exhibit nine you know which refers to materials submitted by Mr. Murrigan in October of 2018 and November of 2018 and when I look at those they're very much talking about the changes in Sri Lanka since 2016 I mean you know I mean that's all that's all they're talking about that the prime minister who had persecuted the Tamils you know from 2005 to 2015 and then left power is now back in power and this is a dangerous thing for the Tamils and I mean on and on I mean there's several articles to that effect so it looks like to me that the the IJ didn't look at evidence that had been submitted to them. Your honor I you know I noticed the same issue and I looked at that pretty closely and first of all what the IJ says is he says there was out of date evidence and nothing else was submitted that changed his opinion about that but if you look at the board's decision the board specifically did look at evidence and cited evidence and I'm looking at page four of the administrative record and it's a little difficult. Can you give me the bait stamp number if you have it? And okay so yeah I think that's for page four of the administrative record and it's at the bottom of that first paragraph is the evidence that is the the part that I think is relevant and it's a little difficult to translate the board's citations into the administrative record. I know that's why I was asking for the bait stamp number. Oh you're asking me for what the numbers are there at the bottom of that first paragraph and what the bait stamp numbers are? I have those I'd be glad to tell you they're um so the the the things they're citing are at administrative record at 322 23 377 420 and in and those refer to things that happened in 2015. And those numbers you just gave me are the bait stamp numbers? Those are the numbers for the administrative record as a whole. I understand. Is that the same thing as numbers? I'm sorry that I'm not understanding what I think the bait stamp is the number there at the bottom of the administrative record of yes zero zero zero nine yeah yes ma'am that is that and that's the numbers I was reading yes ma'am. Oh so I I went through and translated that the numbers that the board cites they just um exhibit numbers and I went through and translated those. What page of the board of immigration appeals has the citation the board of immigration appeals ruling in the appeal in this case you're referring me to citations that the board is making? Yes ma'am and what I was trying to do I thought you were saying that you didn't know where to and that's where do they do that they do that it's it's on it's numbered as page three of their decision but it's page four bait stamp. Okay um and I and I would can you just read to me what you're referring us to? Okay and so if you look at that um that page of their decision they're at the the in the the first full paragraph the the bottom line they cite a number of exhibits that have more recent evidence 2015, 2016, 2017 evidence and I went through and but if the regime if the regime changed in 2018 uh citations to 2017 evidence doesn't help you much does it? Well the thing particularly when that was in the when that was in the record uh what was in the way what was in the record was that there was a new prime minister but not that anything bad had happened just that there was an apprehension that something bad would happen and so the the the agency really had no basis to conclude that the the idea that a new prime minister might make something different happen you know there was no evidence to substantiate that there there was really nothing concrete for them to base that on and and now the prime minister who came back into power in 2018 I mean these articles say his presidency was a reign of terror especially for the minority Tamil community it was a guy who's come back to Mr. Murrigan is has given these articles to the IJ and neither the IJ nor the Board of Immigration Appeals appears to have read these that that's my question I mean and the answer to that that will they refer to evidence from 2017 is not responsive to my question. Well I mean I think the answer to that is that there's no evidence that anything had happened yet there was no concrete evidence of any change of condition. That's your takeaway right I mean there's nothing to show that the Board of Immigration Appeals or the IJ came to that conclusion right and I look at I mean they didn't cite to it. No I don't think that you can conclude that they didn't look at it I mean the assumption is is that they've read the record and the board certainly has extensive citations to the record. Well except for when they say that there's no there's no evidence in the record later than 2016 when it's right there dated 2018. Well I mean as I say the board actually did cite to record evidence when I ask you when I you know ask you to tell me what it was that they cited to you said they referred to evidence that was 2017 evidence right and that was evidence in particular of about the treatment of returned asylum seekers yes ma'am. I know but it doesn't address the change in regimes in Sri Lanka does it I mean if it does I want to know I mean I'm not okay I mean you know I can't say that they discussed the new prime minister but I also think that since the new there was no evidence of any actual change in policies then I think that it explains why they were talking about concrete evidence of things that had happened rather than things that might be suspected to lead to something bad in the future. His return to power has worried human rights groups who hold him responsible for alleged crimes committed by the military at the close of the country's 26-year-long civil war against Tamil separatists and on and on and none of that is acknowledged in either the the IJ ruling or the BIA ruling as far as I can tell and I'm not hearing you tell me anything different. No your honor I mean and I I'm not sure I haven't looked for that particular thing because I thought what we were concerned about was actual practices so I don't want to say that it's not either but I'm not aware. If he's got evidence given to him in November and he says I don't have any evidence you know later than 2016 then you know it seems to me pretty clear that he didn't consider evidence that had been presented to him. Well as I say I think that the board I know but they addressed more recent evidence. Up to 2017 right I mean you don't have any you can't point me to anything where they considered evidence later than 2017. I'm seeing 2017 and I could go but as I say there are many many citations here and I would have to go through and check that out to make sure that because the board tends to have string sites with lots of evidence I can certainly take that as homework and go through and check all those out and see if there are references to the 2018 evidence. I thought that what the court would be more interested in was actual evidence of things that had happened of actual practices. Well actually the evidence that was in the record. Can I ask you a question about Mr. Murrigan's pattern or practice claim? It's another line from the immigration judge's ruling that doesn't make sense to me. You know it says the bulk of the let's see the bulk of the country conditions evidence in the record discusses a pattern of human rights violations in general without sufficiently showing respondent is in danger of being persecuted on his return and I on human rights violations against a group in general as opposed to against the individual. I think I mean I'd have to see the exact place that you're talking about but I think my recollection of that is that he was saying it was generalized evidence that there are human rights issues in the country rather than focusing on Tamils in particular because there was evidence for instance the evidence about law enforcement practices and it wasn't necessarily that wasn't limited to to Tamils that was just evidence that they needed to work on. He says he actually italicizes the word respondent. He says that the respondent hadn't shown that respondent is in danger of being persecuted which is not as I understand it a part of the required showing for pattern and practice evidence. Pattern or practice the relevant evidence would be about Tamils but I think what he was saying is that there but it generalized evidence that is what makes you think that because that's not what he says. It's on page 12 of page 12 of 17 and the IJ. I mean I can read you the sentence again rather the bulk of the country conditions evidence in the record discusses a pattern of human rights violations in general that's italicized comma without sufficiently showing respondent which is also italicized is in danger of being persecuted upon his return. Okay well I think what he's saying there is human rights violations in general in other words not focused on Tamils. That's how I understand. And that's what you think he means. I don't think that's what he says but thank you. Miss Green can I ask you just one question to clarify the discussion that you've been having with Judge Martin. I recognize that the Prime Minister has come back into power. Has Mr. Murgan provided any evidence that persecution has started back up? Any evidence of actual practices? No that's exactly what I was saying and that's why I think that the board didn't spend time on that is because there was the only evidence was entirely speculative that something bad might happen. Now to the extent that Mr. Murgan's attorney today argues that he's that there's some conditions from 2019. Of course this court can only decide this case based on the administrative record and I think Mr. Murgan was arguing today that he would like you to remand to take in for the board to take into account new evidence. But of course there is a procedure for that. The procedure is not for you all to remand the existing order. The procedure is for him to move to reopen the case in the agency and he that's how you get new evidence. Confirm for me Ms. Green that real quickly Kevin that you know this hearing was in November for Mr. Murgan and the change in regime had happened in October, right? I don't know what day the change in the Prime Minister happened and it's not a change I mean it's a change in who the Prime Minister was. It still had the same president. Well but it was within a month of when Mr. Murgan's hearing was, right? If you're telling me that I'm sure you're correct. I haven't compared the dates. If you look at the exhibits in the record that's what they say. Okay all right. All right so can I ask you a question? I know you're out of time but I'm just trying to kind of nudge. So can you explain to me there's a piece of the there are two pieces of the IJ's decision that sort of give me the willies. One there's a statement where the IJ says the court finds respondent to be credible and to have sufficiently corroborated his claim. That's that administrative record 86? Yes. What claim did the IJ find sufficiently corroborated given the fact that he rejected all of Murgan's claims? I think what no I think what he means is that he accepted his testimony that he had been detained twice and that he had been slapped and kicked and so forth. That's what he was talking about. Okay and then so same question in the rejects the Kat claim. The IJ says Murgan's he cites Murgan's lack of credibility and corroborating evidence. So on the one hand he's credible and has corroborated. On the other hand he's not credible and hasn't corroborated. Your honor and I agree that that that statement in there is a mistake but that is also not something that they raised. They haven't raised that as an issue to the board. I guess it makes me worry about the process that perhaps these IJ orders are just being copied and pasted from one case to another. I mean is that sort of the plausible explanation for what happened here? What would you know what happened? I don't know how it happened but it is it it is an error and and it what he he should have raised that to the board. It could have been looked at in the agency but it but things that are not raised to the board should not be before the court. If there are no further questions I'm seriously out of time. Well thank you. Thank you. Your honor just one more you know slight another information your honor. What happened in 2018 that the old prime minister was appointed then he was removed then he won the election in 2019 March sorry in the meantime in 2019 November his brother became the president. So the present president is the brother of this and both were accused of war crimes and that's what justice Breyer said in the supreme court decision that should be go back because of the situation. The situation has changed a lot. The other thing I would like to argue or bring to the attention that the immigration judge repeatedly used a wrong standard. He was saying even the return asylum seeker the evidence is not compelling. That's not the standard for the immigration judge to decide. For the nexus argument the same thing. The judge said the evidence the record does not compel the conclusion that that the my the harm was on account of ground. The compelling standard that's for the federal court. Federal court only employs that standard. For the judge just a reasonable possibility. So he employed a wrong standard. So when I raised this issue in the brief the government's response was well he used the wrong terminology but he actually did the correct thing. On what basis that we know that he actually did the correct thing. The government agrees that he wrote used wrong terminology on both occasion as well as the returned asylum seekers argument. So he wrote wrong argument and then so even if as I initially stated there are three factual predicate even if one factual predicate may be the on the internal relocation as a Tamil his parents are there well that's a factor but that is not a factor for because he helped the refugees. Again as a Tamil returned asylum seeker that is he is his status is distinct from the from the rest of the the family on. If the court doesn't have any other questions your honor I'll rest your honor. Thank you very much we appreciate the presentation and we'll take the case under advisement.